UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN and MARIA PAYAN, individually and as H/W, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 08-cv-6390 (NLH)(KMW) |
| v. | : : | **OPINION** |
| GREENPOINT MORTGAGE FUNDING, INC., AMERICAN MORTGAGE, INC., KAREN MCHALE individually and/or d/b/a AMERICAN MORTGAGE, INC., HOMEQ SERVICING CORPORATION, and JOHN DOES 1-10, | : : : : : : : : : | |
| Defendants. | : : | |

**APPEARANCES**:

Matthew B. Weisberg, Esquire
Prochniak Weisberg, P.C.
7 South Monroe Avenue
Morton, PA 19070
*Attorney for Plaintiffs John and Maria Payan*

Kellie A. Lavery, Esquire
Ryan L. DiClemente, Esquire
Reed Smith, LLP
136 Main Street
Suite 250
Princeton, NJ 08540
     and
Diane A. Bettino, Esquire
Reed Smith, LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
*Attorneys for Defendant GreenPoint Mortgage Funding, Inc.*

Paul C. Dougherty, Esquire
115 Black Horse Pike
Haddon Heights, NJ 08035
*Attorney for Defendant American Mortgage, Inc.*

Edward W. Kirn, III, Esquire
Powers Kirn, LLC
9 East Stow Road
Marlton, NJ 08053
*Attorney for Litton Loan Servicing, LP and Litton GP, LLC*

**HILLMAN, District Judge**

    Plaintiffs, John and Maria Payan, sought to finance the purchase of their new residence by obtaining a loan subject to a mortgage on their property.  With the assistance of their mortgage brokers, American Mortgage, Inc. and Karen McHale, plaintiffs obtained a loan from Litton Loan Servicing, LP. However, because the loan did not feature the favorable terms that plaintiffs had sought and could not be refinanced in a timely manner, plaintiffs, relying on the suggestion of their broker, refinanced into another loan with GreenPoint Mortgage Funding, Inc. ("GreenPoint").  After they had entered into the mortgage loan with GreenPoint, plaintiffs learned that the loan's terms also were unfavorable to them and detrimental to their interests.

    On December 31, 2008, plaintiffs filed a complaint in this Court against GreenPoint, American Mortgage, McHale, Litton Loan Servicing LP and its general partner, Litton GP, LLC (collectively, "Litton"), and Homeq Servicing Corporation ("Homeq"), who handled the administration of the loan.[1]  Among

---

    [1]   Plaintiffs also named "John Does 1-10" in their complaint.

2

their allegations, plaintiffs averred that defendants misrepresented and failed to disclose material information in relation to the mortgage loans, thereby violating several statutes including the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1 et seq.  In response to plaintiffs' claims, GreenPoint filed a Motion for Judgment on the Pleadings, which is presently the sole matter before this Court.

For the reasons expressed below, GreenPoint's Motion for Judgment on the Pleadings will be granted, but plaintiffs' claims will be dismissed without prejudice.  Plaintiffs will have fourteen (14) days from the date of this Opinion to file an amended complaint.

## I.   **JURISDICTION**

This Court exercises subject matter jurisdiction over plaintiffs' remaining federal claim pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

## II.   **BACKGROUND**[2]

Plaintiffs sought to finance the purchase of their new

---

[2]    The following facts relevant to this matter are culled from plaintiffs' complaint filed in this Court.  Given that the present matter comes before the Court by way of GreenPoint's Motion for Judgment on the Pleadings, plaintiffs' allegations are accepted as true and viewed in a light most favorable to plaintiffs, as is required when reviewing such a motion.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

3

residence by obtaining a loan subject to a mortgage on their property.  To facilitate the loan, plaintiffs relied on American Mortgage and McHale, an employee of American Mortgage, to act as its mortgage broker.  By April 2006, plaintiffs were scheduled to finalize a loan that American Mortgage and McHale (collectively, "broker") had obtained for them.

According to plaintiffs, however, problems arose surrounding the loan.  Originally scheduled for April 24, 2006, the closing was rescheduled for April 17, 2006.  Despite repeated requests and the closing's imminency, the broker failed to provide plaintiffs in advance with pertinent details regarding the loan, such as the monthly payment, interest rate, and closing costs.  In addition, McHale did not appear at the closing to assist plaintiffs as she had promised to do.  Because certain documents were not forwarded to the title company, the closing was delayed further on April 17th.  Moreover, the loan did not include all of the terms that were promised to plaintiffs.  Via telephone, plaintiffs spoke with McHale who assured plaintiffs that they should sign the papers and that the loan would be refinanced within thirty days to comport with their expectations.  As a result of that conversation, plaintiffs signed the documents at closing and purchased the property.  At some point after the closing, Homeq assumed the administration of the loan, including collecting, monitoring, reporting, and remitting loan payments.

4

Assurances notwithstanding, the broker could not refinance the loan as plaintiffs had expected and desired.  Nevertheless, the broker informed plaintiffs of another loan which might be more favorable to them but with slightly higher monthly payments. Plaintiffs accepted the broker's suggestion and, in November 2006, the broker, according to plaintiffs' complaint, "refinanced Plaintiffs into a complex, negative amortization, Payment-Option, Adjustable Rate Mortgage through [GreenPoint], without disclosure of the details and terms of the loan, just advising Plaintiffs that the program was similar to the COSI loan" they wanted from the outset.  The loan was in the amount of approximately $256,500 and was secured by a mortgage on plaintiffs' property.

Plaintiffs were unaware of the agreement's terms until they received monthly mortgage statements.  Upon learning of the terms, plaintiffs contacted GreenPoint, who informed them that their loan was nothing like the COSI loan they had sought to obtain.  Contrary to the broker's representations, the second monthly statement from GreenPoint indicated that plaintiffs' interest rate increased from 2.5% to 9.25% and that monthly payments rose from $1,365 to $2,400.

Plaintiffs refinanced out of the loan in 2007.  Thereafter, on December 31, 2008, plaintiffs filed a complaint in this Court against GreenPoint, American Mortgage, McHale, Homeq, and

5

Litton.[3]  Among the allegations set forth in their complaint,
plaintiffs aver that American Mortgage and McHale made several
material misrepresentations to them, including that the broker
could secure plaintiffs an affordable loan featuring the best
possible terms given plaintiffs' circumstances.  Germane to the
present matter, plaintiffs also allege that GreenPoint violated
the TILA by failing to make material disclosures concerning the
"amount financed," the "finance charge," and the "annual
percentage rate," among other pertinent information.  Similarly,
plaintiffs claim that GreenPoint failed to disclose charges and
fees for which plaintiffs ultimately bore the cost, such as the
"'Yield Spread Premium'" ("YSP"), and that a number of those
charges and fees were neither bona fide nor reasonable.  In
addition, plaintiffs state that GreenPoint did not provide each
of them with two copies of the notice of the right to rescind as
is mandated by the TILA.  Finally, plaintiffs seem to intimate
that GreenPoint failed to enforce its own underwriting
guidelines, resulting in the issuance of a mortgage loan on which
plaintiffs were destined to default, and that some sort of agency
relationship may have existed between defendants, including
GreenPoint and the broker.

Plaintiffs conclude that had defendants acted appropriately

---

[3]     In September 2009, plaintiffs and Litton agreed to a
Stipulation of Dismissal, whereupon plaintiffs dismissed, without
prejudice, their claims against Litton.

and in accordance with their duties and responsibilities, "the loan would not have closed, or, if it did, it would have closed upon different more beneficial terms."  As a consequence of this misconduct, plaintiffs seek, among other remedies, to rescind the mortgage loan agreement with GreenPoint.  In response, GreenPoint has moved for judgment on the pleadings.

Presently before this Court is GreenPoint's Motion for Judgment on the Pleadings.

## III.  DISCUSSION

### A.   Standard for Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed.  Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  Under Rule 12(c), the movant must clearly establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citation and internal quotation marks omitted).  In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6).  Turbe, 938 F.2d at 428.  Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

Further, although Rule 12(d) provides that a court should

treat a Rule 12(b)(6) or 12(c) motion as a motion for summary
judgment whenever matters outside the pleadings are considered,
the Third Circuit has clarified that "[m]erely attaching
documents to a Rule 12(c) motion, however, does not convert it to
a motion under Rule 56." CitiSteel USA, Inc. v. GE, 78 Fed.
Appx. 832, 834-35 (3d Cir. 2003).  In ruling on a motion to
dismiss, a court has "'discretion to address evidence outside the
complaint . . . .'"  Id. at 835 (quoting Pryor v. Nat'l
Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)).
Thus, the court "'may consider an undisputedly authentic document
that a defendant attaches as an exhibit to a motion to dismiss if
the plaintiff's claims are based on the document.'"[4]  Id.
(quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d
Cir. 1993)).

    Ultimately, a district court, in weighing a motion to
dismiss, asks "'not whether a plaintiff will ultimately prevail
but whether the claimant is entitled to offer evidence to support
the claim.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8
(2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974));
see Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.

----

    [4]    To its Motion for Judgment on the Pleadings, GreenPoint
attaches several documents relating to the mortgage loan
transaction between plaintiffs and GreenPoint.  Plaintiffs do not
challenge the authenticity of those documents or GreenPoint's
reliance on them.  Further, plaintiffs' complaint implicates
directly the content of the documents, making them especially
important to the Court's evaluation of the present matter.

2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)).  A court need not credit either "'bald assertions'" or "'legal conclusions'" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  Similarly, "[a] motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Philadelphia, 2009 U.S. App. LEXIS 16672, at *8 (3d Cir. Jul. 29, 2009) (quoting Twombly, 550 U.S. at 555). The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

**B.   Voluntary Dismissal**

To begin, GreenPoint has challenged plaintiffs' claims for alleged violations of the TILA, the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  In response, plaintiffs have voluntarily withdrawn their

9

HOEPA and RESPA claims and no longer seek statutory damages or recoupment under the TILA.  Rather, plaintiffs continue to assert their TILA claim against GreenPoint but only for rescission of the mortgage loan, and also persist in their claim under the CFA.

GreenPoint does not seem to object to plaintiffs' withdrawal.  Accordingly, because of plaintiffs' voluntary withdrawal of those claims, plaintiffs' claims against GreenPoint pursuant to the HOEPA and the RESPA are dismissed in their entirety and plaintiffs' claims seeking statutory damages or recoupment under the TILA also are dismissed.[5]

### C.   Truth in Lending Act

GreenPoint argues that, in spite of plaintiffs' assertions to the contrary, it made all requisite disclosures to plaintiffs as evinced by the documents that plaintiffs received prior to and during the closing and which they signed.  In particular, GreenPoint explains that plaintiffs received, and signed, a "Truth-in-Lending Disclosure Statement" and a "Truth-in-Lending Summary Statement."  Those documents, submits GreenPoint, conspicuously and properly disclosed the amount financed and the finance charge, along with other necessary information, in

---

[5]   In its motion, GreenPoint argued that the one-year statute of limitations expired on plaintiffs' claims under the TILA, the HOEPA, and the RESPA.  Because plaintiffs withdrew their HOEPA and RESPA claims and their claims for damages under TILA -- which, plaintiffs note, adhere to a shorter limitations period than does a TILA claim for rescission -- the limitations argument appears to be moot.

accordance with the TILA.  Further, GreenPoint challenges the
sufficiency of plaintiffs' claims, suggesting that plaintiffs'
complaint lacks factual specificity as required by federal
pleading standards.  Plaintiffs reiterate that GreenPoint did not
properly disclose certain charges and fees as part of the finance
charge and that certain charges and fees were not bona fide or
reasonable.

The "TILA is a federal consumer protection statute, intended
to promote the informed use of credit by requiring certain
uniform disclosures from creditors."[6]  In re Cmty. Bank of N. Va.
& Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418
F.3d 277, 303 (3d Cir. 2005).  "Among other things, creditors who
make loans secured by a borrower's principal dwelling are
required to provide all borrowers with 'material disclosures,'
including 'the annual percentage rate, the finance charge, the
amount financed, the total [of] payments, [and] the payment
schedule.'"  Id. at 304 (quoting 12 C.F.R. § 226.23); see 15
U.S.C. § 1638 (enumerating required disclosures by creditor).
"If 'material disclosures' are not provided or inaccurately
provided, the creditor is strictly liable and a borrower has the

---

[6]     The TILA "is implemented by Regulation Z, 12 C.F.R. §§
226.1 et seq., which was promulgated by the Board of Governors of
the Federal Reserve System under the mandate of 15 U.S.C. §
1607."  In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of
Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303-04 (3d
Cir. 2005).

right to rescind the loan up to '3 years after consummation, upon transfer of all of the consumer's interest in the property, [or] upon sale of the property, whichever occurs first.'"  Cmty. Bank, 418 F.3d at 303 (quoting 12 C.F.R. § 226.23).

Although in their complaint plaintiffs allege that GreenPoint did not make all material disclosures as required by the TILA, GreenPoint, as part of its present motion, has provided documentation, signed by plaintiffs, which seems to properly set forth the material disclosures mandated by the TILA.[7]  In their opposition papers to the present motion, plaintiffs reassert that not all material disclosures were made by GreenPoint and that, although Regulation Z excludes certain charges and fees from being disclosed as part of the "finance charge," those charges must nonetheless be "bona fide and reasonable in amount."  If not bona fide and reasonable, submit plaintiffs, then those charges must be disclosed.  According to plaintiffs, whether those fees charged by GreenPoint were bona fide and reasonable raises an issue that necessitates discovery and is inappropriate for resolution at this stage of the litigation.

Regulation Z provides that the "finance charge is the cost

---

[7]     Despite plaintiffs' claims to the contrary, the "Truth-in-Lending Disclosure Statement," which is signed by both plaintiffs, and the accompanying "Truth-in-Lending Summary Statement" set forth information required to be disclosed by the TILA and Regulation Z, such as the "amount financed," the "annual percentage rate," and the "finance charge."  Plaintiffs do not state how or why these disclosures are deficient.

of consumer credit as a dollar amount" and "includes any charge
payable directly or indirectly by the consumer and imposed
directly or indirectly by the creditor as an incident to or a
condition of the extension of credit."  12 C.F.R. § 226.4(a).
Although the finance charge must be disclosed to the borrower, 12
C.F.R. § 226.18(d), Regulation Z enumerates a number of charges
excluded from the finance charge, 12 C.F.R. § 226.4(c).  Among
those charges which do not constitute part of the finance charge
are certain "[r]eal-estate related fees" incurred "in a
transaction secured by real property or in a residential mortgage
transaction, if the fees are bona fide and reasonable in amount."
12 C.F.R. § 226.4(c)(7).  If the fees are not bona fide or are
unreasonable, then they must be disclosed.  <u>Jefferies v.
Ameriquest Mortg. Co.</u>, 543 F. Supp. 2d 368, 379 n.13 (E.D. Pa.
2008).

In spite of plaintiffs' accurate recitation of the law,
their complaint fails to satisfy federal pleading standards,
especially in light of the documentation furnished by
GreenPoint.[8]  In particular, plaintiffs fail to state with

---

[8]      Plaintiffs suggest that the heightened pleading
standard set forth in <u>Twombly</u> does not apply to simplistic causes
of action such as that at issue here.  Plaintiffs' argument is
unavailing because the standard enunciated in <u>Twombly</u> applies to
all civil actions.  <u>See</u> <u>Garczynski v. Countrywide Home Loans,
Inc.</u>, 2009 U.S. Dist. LEXIS 71417, at *19 (E.D. Pa. Aug. 12,
2009) (rejecting plaintiffs' argument that "'simplistic' causes
of action must meet only the 'no set of facts' standard" because
"<u>Iqbal</u> confirmed that the principles articulated in <u>Twombly</u>

requisite specificity which charges and fees were not properly
disclosed and why certain charges and fees are not bona fide and
are unreasonable in amount.[9]  See Seldon v. Home Loan Servs.,
Inc., 647 F. Supp. 2d 451, 461 (E.D. Pa. 2009) (finding that
"plaintiffs have not set forth sufficient factual allegations
that defendants failed to disclose the finance charge by not
disclosing fees at all or charging unreasonable fees" because

---

'govern[] the pleading standard in all civil actions and
proceedings in the United States district courts'" (quoting
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009))).

[9]     In their complaint, plaintiffs generally allege that
several charges or fees were not disclosed as "'pre-paid finance
charge[s]' or as otherwise legally required," or were not bona
fide nor reasonable.  Only in their opposition brief to
GreenPoint's motion, however, do plaintiffs specifically identify
a number of charges and fees which, they contend, were not
properly disclosed.
     Nevertheless, in its reply brief in support of its motion,
GreenPoint, with reference to documentation, demonstrates that
the charges and fees identified by plaintiffs were either
disclosed or were not subject to the TILA's disclosure
requirement, thereby undermining plaintiffs' assertions.  See,
e.g., 12 C.F.R. § 226.4(c)(7) (excluding from finance charge
"title insurance," "[f]ees for preparing loan-related documents,"
"[n]otary and credit report fees," and "[p]roperty appraisal
fees").  As illustrated by GreenPoint's motion, plaintiffs fail
to explain in what way any charges or fees were not properly
disclosed or were not bona fide or reasonable.  If plaintiffs
still believe that any of the charges or fees enumerated in their
opposition briefs were improperly disclosed or misrepresented,
they may reassert their claims in an amended complaint, as is
further explained below.  That plaintiffs attempt to bolster,
clarify, or refine their allegations in their opposition briefs
does not excuse the insufficiency of their pleadings.  See
Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("It is
axiomatic that the complaint may not be amended by the briefs in
opposition to a motion to dismiss." (citation and internal
quotation marks omitted)).

14

they "provide no factual allegations as to how defendants failed to disclose at all any of the fees listed in the complaint" and "provide no allegation whatsoever as to how any of these fees qualify as unreasonable or non-bona fide").  Without more, plaintiffs' assertions are merely "'bald assertions'" and "'legal conclusions'" without any factual support.[10]  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1429-30; see Iqbal, 129 S. Ct. at 1949 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to sustain the alleged claim against a motion to dismiss).  The shortcomings of plaintiffs' complaint are further illuminated by their failure to adequately retort GreenPoint's legal arguments and its reliance on documentation which belie the

---

[10]     An allegation expressly set forth in plaintiffs' complaint is that GreenPoint did not disclose the YSP, thereby violating the TILA.  However, in its motion, GreenPoint highlights Third Circuit case law suggesting that a YSP need not be disclosed to satisfy the TILA.  See, e.g., Rivers v. Credit Suisse Boston Fin. Corp., 2007 U.S. Dist. LEXIS 23621, at **13-14 (D.N.J. Mar. 30, 2007) ("The defendant did not violate the TILA by failing to disclose the yield spread premium because it is not a 'material disclosure' or an item required for inclusion in the finance charge under TILA."); Strang v. Wells Fargo Bank, N.A., 2005 U.S. Dist. LEXIS 14135, at *16 (E.D. Pa. Jul. 13, 2005) (holding that "the yield spread premium is properly excluded" from the finance charge because it "is already incorporated into the total finance charge as a higher interest rate and therefore should not be double-counted"); Stump v. WMC Mortgage Corp., 2005 U.S. Dist. LEXIS 4304, at **9-13 (E.D. Pa. Mar. 16, 2005). Plaintiffs do not offer any counter-argument in response. Therefore, plaintiffs' allegations concerning the YSP will not save their complaint's deficiencies.

generalized allegations contained in the complaint.[11]

Similarly, plaintiffs' complaint is devoid of any facts demonstrating that an agency relationship existed between GreenPoint and the broker or any of the other defendants. Thus, plaintiffs fail to specify how and why GreenPoint may be accountable for actions committed by the other defendants. See Garczynski v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 71417, at *14 (E.D. Pa. Aug. 12, 2009) (finding that plaintiffs alleged no facts sufficient to support claim that mortgage broker was agent of lender).

Aside from the issue of material disclosures, plaintiffs also argue that GreenPoint failed to provide each of them with two notices of their right to rescind, as is required by the TILA. GreenPoint, on the other hand, has submitted two documents entitled "Notice of Right to Cancel." Along with explaining plaintiffs' rights to cancel the loan transaction and the procedure to do so, the notices also state: "The undersigned

---

[11]     Although they reference it in their opposition briefs to GreenPoint's motion, plaintiffs also fail to allege in their complaint if GreenPoint's purportedly inaccurate disclosures rise above the TILA's "[t]olerances for accuracy." See 12 C.F.R. § 226.23(g) (providing that "the finance charge and other disclosures affected by the finance charge . . . shall be considered accurate for purposes of [the TILA]" if difference between disclosed finance charge and actual finance charge is amount tolerated by the statute). Based on the documentation provided by GreenPoint, and absent a more detailed showing by plaintiffs, it appears that GreenPoint complied in large part with the TILA's requirements.

each acknowledge receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u> . . . ."  One notice is signed by John Payan and the other is signed by Maria Payan.  Given plaintiffs' signatures on these documents, GreenPoint asserts that plaintiffs' TILA claim regarding lack of notice must fail.

Regulation Z provides that "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind" and that certain information must be set forth in the notice.  12 C.F.R. § 226.23(b)(1).  "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under [the TILA] by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."  15 U.S.C. § 1635(c).

Here, plaintiffs' signatures appear on separate documents, each identified as "Notice of Right to Cancel."  Based on the notices' express language, the person who signs each document acknowledges that he or she received two copies of the "Notice of Right to Cancel" document.  Plaintiffs do not dispute that they signed the notices and that the signatures appearing on the notices are theirs.  Accordingly, a rebuttable presumption arises in favor of GreenPoint.  <u>See</u> 15 U.S.C. § 1635(c).  Because plaintiffs do not offer any explanation to rebut the presumption, plaintiffs' claim that they each received only one notice of the

17

right to rescind must be dismissed.  See Gonzales v. CIT
Group/Consumer Fin., Inc., 2008 U.S. Dist. LEXIS 89092, at **7-9
(E.D. Pa. Oct. 30, 2008) (rejecting plaintiff's argument that she
did not receive two copies of notice of right to rescind because
defendant presented a notice signed by plaintiff in which she
acknowledged receipt of two copies and because plaintiff did not
proffer sufficient evidence to rebut the presumption); see also
Garza v. Am. Home Mortg., 2009 U.S. Dist. LEXIS 40518, at **8-9
(E.D. Cal. Apr. 28, 2009) (holding that where plaintiff
acknowledged by signature that she had received two copies of
notice of right to cancel, plaintiff was "unable to rest on [her]
complaint's allegation" and was "required to offer some evidence
in support of the allegation" (citation and internal quotation
marks omitted)).

Therefore, for the foregoing reasons, plaintiffs' TILA
claims against GreenPoint must be dismissed.

**D.    New Jersey Consumer Fraud Act**

GreenPoint argues that plaintiffs have not asserted a viable
CFA claim because they have not alleged facts sufficient to
satisfy the CFA's elements and, thus, to state a cause of action
under the statute.  Plaintiffs defend their CFA claim by
suggesting that a violation of the TILA may also constitute a per
se violation of the CFA and that, alternatively, GreenPoint's
issuance of a "Pay Option ARM," which plaintiffs supposedly could

18

not afford, violated the CFA.

To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. <u>Bosland v. Warnock Dodge, Inc.</u>, 964 A.2d 741, 749 (N.J. 2009).  Regarding the second element, the plaintiff must show that he or she has "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." <u>Id.</u>; <u>see</u> <u>Weinberg v. Sprint Corp.</u>, 801 A.2d 281, 283 (N.J. 2002) ("[T]o have standing under the [CFA] a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment.").  Further, when the alleged misconduct consists of an omission, the plaintiff must also demonstrate the defendant's intent. <u>See</u> <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 462 (N.J. 1994).

In their complaint, plaintiffs do not identify any particular facts in support of their CFA claim nor do they plead the elements of a CFA claim.  Subsequently, in their opposition brief to GreenPoint's motion, plaintiffs argue that violations of the TILA and other statutes may constitute a <u>per se</u> violation of the CFA.  Further, it is in their rebuttal, or sur-reply, to GreenPoint's motion that plaintiffs first claim that the issuance of a "Pay Option ARM" violated the CFA because GreenPoint

19

knowingly loaned plaintiffs a mortgage they could not afford.

Because all of plaintiffs' claims have been dismissed, either voluntarily or by this Court, plaintiffs' assertion that the violation of another statute also constitutes a violation of the CFA is moot.  Insofar as plaintiffs allege that the issuance of the "Pay Option ARM" violates the CFA, plaintiffs expressly raise the argument as grounds for the CFA claim for the first time in their rebuttal to GreenPoint's motion when they should have conspicuously stated that claim in their complaint.  See Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)); Smithkline Beecham PLC v. Teva Pharms. USA, Inc., 2007 U.S. Dist. LEXIS 45703, at *3 (D.N.J. Jun. 22, 2007) ("Reply briefs are not the time to present new argument."). Further, plaintiffs offer no support that their theory is cognizable under the CFA, which would require that GreenPoint committed unlawful conduct, that plaintiffs suffered an ascertainable loss, and that a causal relationship existed between GreenPoint's misconduct and plaintiffs' loss.  To satisfy the federal pleading standard, plaintiffs' complaint must expressly set forth factual allegations that satisfy the elements of a CFA claim.  See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief . . . .").  Plaintiffs have not fulfilled their responsibility.

Therefore, having failed to properly articulate their claim in their complaint, plaintiffs' CFA claim is dismissed.

### E.   Leave to Amend Complaint

Were this Court to find their complaint defective, plaintiffs have requested an opportunity to amend their complaint.  GreenPoint suggests that leave to amend should not be granted because plaintiffs already had an opportunity to do so and to enable them to amend now would contradict the Scheduling Order in which May 29, 2009 was identified as the final day to submit any amended pleadings.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.  Here, the Court finds that justice requires that plaintiffs have an opportunity to amend their complaint to cure the deficiencies identified in this Opinion as well as any others that may exist.  See Carmen v. Metrocities Mortg. Corp., 2009 U.S. Dist. LEXIS 42245, at *23 (D.N.J. May 18, 2009) (dismissing plaintiffs' TILA and CFA claims, among others, without prejudice and granting plaintiffs fourteen days to file amended complaint).

21

Considering the signed loan documents furnished by GreenPoint and the vagueness of plaintiffs' complaint, it is unclear for sure whether or not there may be some charges or fees which were not bona fide or reasonable or were otherwise not properly disclosed. For example, to the extent that plaintiffs may demonstrate that any of the particular charges or fees highlighted in their opposition brief to the present motion may have been improperly calculated or undisclosed, plaintiffs should set forth that claim in their amended complaint with the requisite specificity. Moreover, given that plaintiffs consummated their loan with GreenPoint about three years ago, the statute of limitations may expire on plaintiffs' claims if they were not afforded an opportunity to amend.

Therefore, plaintiffs' TILA and CFA claims against GreenPoint are dismissed without prejudice.  Moreover, plaintiffs are granted leave to amend and file their complaint with regards to GreenPoint within fourteen (14) days of the date of this Opinion.  Any amended complaint filed must abide by the pleading standards set forth in <u>Twombly</u> and <u>Iqbal</u> as well as meet the standards set by Federal Rule of Civil Procedure 11(b).

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, GreenPoint's Motion for Judgment on the Pleadings is granted insofar as plaintiffs' claims against GreenPoint are dismissed without prejudice.  However, the Court

22

grants plaintiffs leave to amend and file their complaint with regards to GreenPoint within fourteen (14) days of the date of this Opinion.  Failure to file their amended complaint within the prescribed time period will result in the dismissal of all claims against GreenPoint with prejudice.  An Order consistent with this Opinion shall be entered.


DATED:  January 6, 2010               /s/ NOEL L. HILLMAN
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.