UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN and MARIA PAYAN, individually and as H/W,<br><br>             Plaintiffs,<br><br>     v.<br><br>GREENPOINT MORTGAGE FUNDING, INC., AMERICAN MORTGAGE, INC., KAREN MCHALE individually and/or d/b/a AMERICAN MORTGAGE, INC., HOMEQ SERVICING CORPORATION, and JOHN DOES 1-10,<br><br>             Defendants. | Civil Action No.<br>08-cv-6390 (NLH)(KMW)<br><br>**OPINION** |

**APPEARANCES**:

Matthew B. Weisberg, Esquire
Prochniak Weisberg, P.C.
7 South Monroe Avenue
Morton, PA 19070
*Attorney for Plaintiffs John and Maria Payan*

Kellie A. Lavery, Esquire
Reed Smith, LLP
136 Main Street
Suite 250
Princeton, NJ 08540
     and
Diane A. Bettino, Esquire
Reed Smith, LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
*Attorneys for Defendant GreenPoint Mortgage Funding, Inc.*

Paul C. Dougherty, Esquire
115 Black Horse Pike
Haddon Heights, NJ 08035
*Attorney for Defendant American Mortgage, Inc.*

Edward W. Kirn, III, Esquire
Powers Kirn, LLC

```
9 East Stow Road
Marlton, NJ 08053
```
*Attorney for Litton Loan Servicing, LP and Litton GP, LLC*

**HILLMAN, District Judge**

Plaintiffs, John and Maria Payan, sought to finance the purchase of their new residence by obtaining a loan subject to a mortgage on their property. With the assistance of their mortgage brokers, American Mortgage, Inc. and Karen McHale, plaintiffs obtained a loan from Litton Loan Servicing, LP. However, because the loan did not feature the favorable terms that plaintiffs had sought and could not be refinanced in a timely manner, plaintiffs, relying on the suggestion of their broker, refinanced into another loan with GreenPoint Mortgage Funding, Inc. ("GreenPoint"). After they had entered into the mortgage loan with GreenPoint, plaintiffs learned that the loan's terms also were unfavorable to them and detrimental to their interests.

On December 31, 2008, plaintiffs filed a complaint in this Court against GreenPoint, American Mortgage, McHale, Litton Loan Servicing LP and its general partner, Litton GP, LLC (collectively, "Litton"), and Homeq Servicing Corporation ("Homeq"), who handled the administration of the loan. Among their allegations, plaintiffs averred that defendants misrepresented and failed to disclose material information in relation to the mortgage loans, thereby violating several statutes including the Truth in Lending Act ("TILA"), 15 U.S.C. §

1601 et seq., and the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1 et seq. In response to plaintiffs' claims, GreenPoint moved for judgment on the pleadings. In an Opinion and Order dated January 6, 2010, the Court granted GreenPoint's motion and dismissed plaintiffs' claims against GreenPoint, without prejudice. Further, the Court granted plaintiffs leave to amend their complaint.

Since that time, plaintiffs have amended their complaint twice. On or around April 6, 2010, GreenPoint again moved for judgment on the pleadings.

For the reasons expressed below, GreenPoint's Motion for Judgment on the Pleadings will be granted.

## I.   JURISDICTION

The Court exercises subject matter jurisdiction over plaintiffs' federal claim pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

## II.   BACKGROUND[1]

Plaintiffs sought to finance the purchase of their new

---

[1] The following facts relevant to this matter are culled from this Court's Opinion dated January 6, 2010, Payan v. GreenPoint Mortgage Funding, Inc., 681 F. Supp. 2d 564 (D.N.J. 2010), and plaintiffs' second amended complaint. Given that the present matter comes before the Court by way of GreenPoint's Motion for Judgment on the Pleadings, plaintiffs' allegations are accepted as true and viewed in a light most favorable to plaintiffs, as is required when reviewing such a motion. See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

3

residence by obtaining a loan subject to a mortgage on their property.  To facilitate the loan, plaintiffs relied on American Mortgage and McHale, an employee of American Mortgage, to act as its mortgage broker.  By April 2006, plaintiffs were scheduled to finalize a loan that American Mortgage and McHale (collectively, "broker") had obtained for them.

According to plaintiffs, however, problems arose surrounding the loan.  Originally scheduled for April 24, 2006, the closing was rescheduled for April 17, 2006.  Despite repeated requests and the closing's imminency, the broker failed to provide plaintiffs in advance with pertinent details regarding the loan, such as the monthly payment, interest rate, and closing costs.  In addition, McHale did not appear at the closing to assist plaintiffs as she had promised to do.  Because certain documents were not forwarded to the title company, the closing was delayed further on April 17th.  Moreover, the loan did not include all of the terms that were promised to plaintiffs.  Via telephone, plaintiffs spoke with McHale who assured plaintiffs that they should sign the papers and that the loan would be refinanced within thirty days to comport with their expectations.  As a result of that conversation, plaintiffs signed the documents at closing and purchased the property.  At some point after the closing, Homeq assumed the administration of the loan, including collecting, monitoring, reporting, and remitting loan payments.

Assurances notwithstanding, the broker could not refinance

4

the loan as plaintiffs had expected and desired.  Nevertheless, the broker informed plaintiffs of another loan which might be more favorable to them but with slightly higher monthly payments.  Plaintiffs accepted the broker's suggestion and, in November 2006, the broker, according to plaintiffs' second amended complaint, "refinanced Plaintiffs into a complex, negative amortization, Payment-Option, Adjustable Rate Mortgage through [GreenPoint], without disclosure of the details and terms of the loan, just advising Plaintiffs that the program was similar to the COSI loan" they wanted from the outset.  The loan was in the amount of approximately $256,500 and was secured by a mortgage on plaintiffs' property.

Plaintiffs were unaware of the agreement's terms until they received monthly mortgage statements.  Upon learning of the terms, plaintiffs contacted GreenPoint, who informed them that their loan was nothing like the COSI loan they had sought to obtain.  Contrary to the broker's representations, the second monthly statement from GreenPoint indicated that plaintiffs' interest rate increased from 2.5% to 9.25% and that monthly payments rose from $1,365 to $2,400.

Plaintiffs refinanced out of the loan in 2007.  Thereafter, on December 31, 2008, plaintiffs filed a complaint in this Court against GreenPoint, American Mortgage, McHale, Homeq, and

Litton.[2]  On January 6, 2010, the Court granted GreenPoint's motion for judgment on the pleadings and dismissed plaintiffs' claims, without prejudice.  The Court also granted plaintiffs leave to amend their complaint.  About two weeks later, plaintiffs filed an amended complaint.[3]  The Magistrate Judge later granted plaintiffs' leave to file their second amended complaint, which was entered onto the docket on March 9, 2010.

Among the allegations set forth in their second amended complaint and relevant to the present matter, plaintiffs allege that GreenPoint violated the TILA by failing to make material disclosures concerning the proper monthly payments for the loan and the annual percentage rate.  Plaintiffs also appear to allege that an agency relationship existed between defendants, including GreenPoint and the broker, and that defendants acted together to maximize their financial gains at plaintiffs' expense.

As a consequence of this misconduct, plaintiffs seek, among other remedies, to rescind the mortgage loan agreement with GreenPoint.  In response, GreenPoint, again, has moved for judgment on the pleadings.

### III. DISCUSSION

---

[2] In September 2009, plaintiffs and Litton agreed to a Stipulation of Dismissal, whereupon plaintiffs dismissed, without prejudice, their claims against Litton.

[3] Plaintiffs did not name Homeq as a defendant in their amended complaint.  As a result, Homeq was terminated as a defendant from the case.

### A. Standard for Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). Under Rule 12(c), the movant must clearly establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citation and internal quotation marks omitted). In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). Turbe, 938 F.2d at 428. Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

Further, although Rule 12(d) provides that a court should treat a Rule 12(b)(6) or 12(c) motion as a motion for summary judgment whenever matters outside the pleadings are considered, the Third Circuit has clarified that "[m]erely attaching documents to a Rule 12(c) motion, however, does not convert it to a motion under Rule 56." CitiSteel USA, Inc. v. GE, 78 Fed. Appx. 832, 834-35 (3d Cir. 2003). In ruling on a motion to dismiss, a court has "'discretion to address evidence outside the complaint . . . .'" Id. at 835 (quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)). Thus, the court "'may consider an undisputedly authentic document

7

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"[4]  Id. (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Ultimately, a district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)).  A court need not credit either "'bald assertions'" or "'legal conclusions'" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec.

---

[4] To its original Motion for Judgment on the Pleadings, GreenPoint attached several documents relating to the mortgage loan transaction between plaintiffs and GreenPoint.  GreenPoint again relies on several of those documents.  Plaintiffs do not challenge the authenticity of those documents or GreenPoint's reliance on them.  Further, plaintiffs' complaint implicates directly the content of the documents, making them especially important to the Court's evaluation of the present matter.

8

Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  Similarly, "[a] motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Philadelphia, 338 F. App'x 261, 264 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

**B.   Truth in Lending Act**

GreenPoint argues that, like their original complaint and first amended complaint, plaintiffs' second amended complaint fails to sufficiently articulate any viable claims for which relief may be provided.  Plaintiffs' claims, says GreenPoint, lack factual and legal support and do not satisfy federal pleading standards.  Further, GreenPoint reiterates that it made all requisite disclosures to plaintiffs as evinced by the documents that plaintiffs received prior to and during the closing and which they signed.[5]  In particular, GreenPoint explains that plaintiffs received, and signed, a "Truth-in-Lending Disclosure Statement" and a "Truth-in-Lending Summary

---

[5] GreenPoint also contends that plaintiffs cannot proceed on their claim under the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 et seq.  In their opposition brief to GreenPoint's motion, plaintiffs acknowledge that their inclusion of a HOEPA claim in their second amended complaint was a mistake and that the claim is voluntarily withdrawn.  Accordingly, to the extent that plaintiffs reasserted a HOEPA claim, that claim is hereby dismissed.

9

Statement." Those documents, submits GreenPoint, conspicuously and properly disclosed material information in accordance with the TILA. Plaintiffs reiterate that GreenPoint violated the TILA by failing to disclose the proper monthly payments for the loan and the annual percentage rate.

The "TILA is a federal consumer protection statute, intended to promote the informed use of credit by requiring certain uniform disclosures from creditors."[6] In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303 (3d Cir. 2005). "Among other things, creditors who make loans secured by a borrower's principal dwelling are required to provide all borrowers with 'material disclosures,' including 'the annual percentage rate, the finance charge, the amount financed, the total [of] payments, [and] the payment schedule.'" Id. at 304 (quoting 12 C.F.R. § 226.23); see 15 U.S.C. § 1638 (enumerating required disclosures by creditor). "If 'material disclosures' are not provided or inaccurately provided, the creditor is strictly liable and a borrower has the right to rescind the loan up to '3 years after consummation, upon transfer of all of the consumer's interest in the property, [or] upon sale of the property, whichever occurs first.'" Cmty. Bank,

---

[6] The TILA "is implemented by Regulation Z, 12 C.F.R. §§ 226.1 et seq., which was promulgated by the Board of Governors of the Federal Reserve System under the mandate of 15 U.S.C. § 1607." In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303-04 (3d Cir. 2005).

10

418 F.3d at 303 (quoting 12 C.F.R. § 226.23).

At the outset, the Court recognizes that plaintiffs aver many of the same allegations as they did in their original complaint. To the extent that plaintiffs' most recent averments mirror or recapitulate their earlier averments without more factual or legal detail, those averments will not save plaintiffs' claims from GreenPoint's motion. However, there are several allegations that distinguish plaintiffs' current complaint from their first one.[7]

Plaintiffs allege that GreenPoint misrepresented the proper payment schedule for the loan. Whereas the note listed the initial payment amount as $996.89, the TILA Disclosure Statement sets forth the amount owed for each of the first twelve payments as $1,294. Plaintiffs believe the disparity constitutes a TILA violation. Because of that misrepresentation, plaintiffs also assert that the annual percentage rate is misrepresented. Defendants counter that, pursuant to Regulation Z and its official staff commentary, the payments listed in the payment schedule may include other amounts and fees than simply the initial payment amount listed in the note -- in this case,

---

[7] In their second amended complaint, plaintiffs allege inaccurate disclosures with respect to the finance charge. Defendants dispute plaintiffs' allegations and assert that the charges were properly disclosed. In their opposition brief, plaintiffs voluntarily withdraw their claims concerning the finance charge disclosures. Accordingly, the Court will dismiss any claims relating to those allegations.

11

amounts reflecting hazard insurance and private mortgage insurance premiums.

The TILA requires disclosure of "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6); see 12 C.F.R. § 226.18(g) (specifying information that must be disclosed as part of the payment schedule). According to the official staff commentary for 12 C.F.R. § 226.18, the payments listed in the payment schedule "may include amounts beyond the amount financed and finance charge." 12 C.F.R. § 226.18(g), cmt. 18(g)(1). "For example, the disclosed payments may, at the creditor's option, reflect certain insurance premiums where the premiums are not part of either the amount financed or the finance charge, as well as real estate escrow amounts such as taxes added to the payment in mortgage transactions." Id. "The payment schedule should reflect the consumer's mortgage insurance payments until the date on which the creditor must automatically terminate coverage under applicable law, even though the consumer may have a right to request that the insurance be cancelled earlier." 12 C.F.R. § 226.18(g), cmt. 18(g)(5).

Relying on Regulation Z and its official staff commentary, GreenPoint persuasively argues that the amounts disclosed as part of the payment schedule were permissibly higher than the initial payment amount listed in the note. Plaintiffs do not proffer any convincing arguments, facts, or legal authority to rebut

12

GreenPoint's assertion.  Further, it is undisputed that GreenPoint disclosed the annual percentage rate (or, "APR") as 10.135% on the TILA Disclosure Statement.  See 15 U.S.C. § 1638(a)(4) (requiring disclosure of the APR); 12 C.F.R. § 226.18(e) (same).  Plaintiffs challenge to the accuracy of GreenPoint's APR disclosure is seemingly interrelated to, and predicated on, the purported misrepresentation of the payment schedule.  However, given that no viable claim against the payment schedule persists, the TILA claim pertaining to the disclosed annual percentage rate also fails.[8]  Moreover, to whatever degree plaintiffs attempt to assert a TILA claim beyond those described herein, the Court finds those allegations to be opaque and insufficient to state a claim upon which relief may be granted.

Therefore, because the complaint does not articulate, with sufficient basis in law or fact, a claim concerning the payment schedule, the annual percentage rate, or any misrepresentations thereof, plaintiffs' TILA claims against GreenPoint must be dismissed.

### C. New Jersey Consumer Fraud Act and Agency

GreenPoint argues that plaintiffs, again, have not asserted

---

[8] It is worth noting that the TILA Summary Statement provided to plaintiffs contains a section that sets forth relevant definitions of TILA terms.  For both the annual percentage rate and the payment schedule, the TILA Summary Statement explains that the representations may include other amounts, specifically private mortgage insurance.

13

a viable CFA claim because they have not alleged facts sufficient to satisfy the CFA's elements and, thus, to state a cause of action under the statute. Plaintiffs appear to reiterate that GreenPoint made material misrepresentations in violation of the TILA. Plaintiffs also suggest that the broker acted as an agent for GreenPoint, thereby presumably imputing its own liability to GreenPoint. Plaintiffs surmise that their CFA claim may proceed on account of the alleged violations of the TILA or agency liability.

To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009). Regarding the second element, the plaintiff must show that he or she has "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." Id.; see Weinberg v. Sprint Corp., 801 A.2d 281, 283 (N.J. 2002) ("[T]o have standing under the [CFA] a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment.").

Like their original complaint, plaintiffs' second amended complaint does not identify any particular facts in support of the CFA claim nor does it set forth the elements of a CFA claim. Moreover, the Court already has dismissed plaintiffs' TILA claim

14

against GreenPoint. Therefore, any possible violation of the TILA cannot formulate the basis of a CFA claim in this case. Further, plaintiffs, themselves, have voluntarily withdrawn their assertions pertaining to the finance charge. Absent any more particularized facts, there is simply nothing from which a CFA claim may be inferred.

In addition, plaintiffs allege that GreenPoint shares a kind of agency relationship with the other defendants. Once more, the Court agrees with GreenPoint that plaintiffs fail to satisfy federal pleading standards. Though more detailed than the original complaint, plaintiffs' second amended complaint is still devoid of any facts evincing that an agency relationship existed between GreenPoint and the broker or any of the other defendants. With respect to agency, plaintiffs' facts are entirely speculative and conclusory, and do not demonstrate that GreenPoint had any involvement in, let alone control over, the broker's efforts to help plaintiffs' refinance. As highlighted by GreenPoint, plaintiffs' own contract with American Mortgage explains that the broker acted as an independent contractor to both plaintiffs and lenders. Thus, plaintiffs fail to specify how and why GreenPoint may be accountable for actions committed by the other defendants. See Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 512 (E.D. Pa. 2009) (finding that plaintiffs alleged no facts sufficient to support claim that mortgage broker was agent of lender). If anything, plaintiffs

15

seem to allege a vague civil conspiracy, but that claim is not before the Court nor is it apparent that the allegations would adequately establish such an assertion.

Therefore, having failed to properly articulate a CFA claim or potential agency liability with respect to GreenPoint, plaintiffs' CFA and agency claims are dismissed.

### D. Supplemental Jurisdiction

The Court's subject matter jurisdiction in this case appears to hinge on federal question jurisdiction.  With the dismissal of their claims against GreenPoint, including their only federal cause of action, plaintiffs do not seem to allege anything other than state law claims against the remaining defendants in this case.  Therefore, because plaintiffs' sole federal claim has been dismissed, the Court, sua sponte, raises the issue of supplemental jurisdiction over the remaining state law claims.

28 U.S.C. § 1367 reads, in relevant part,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  However, "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'"  Oras v. City of Jersey City, 328 F. App'x 772,

16

775 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). "'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" <u>Id.</u> (quoting <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)); <u>see</u> <u>Livingston v. Borough of McKees Rocks</u>, 223 F. App'x 84, 88-89 (3d Cir. 2007) (holding that because the district court correctly granted summary judgment in favor of defendants on all of plaintiffs' federal claims, "it was appropriate for the Court to decline to exercise supplemental jurisdiction over the [plaintiffs'] state claims"); <u>Santiago v. York County</u>, 2010 U.S. Dist. LEXIS 67437, at **10-11 (M.D. Pa. Jul. 7, 2010) (declining to exercise supplemental jurisdiction over state law claims after granting defendants summary judgment as to plaintiffs' Section 1983 claims).

    The Court questions whether any considerations of judicial economy, convenience, or fairness would warrant its continued adjudication of this case. As such, the Court is inclined to refrain from exercising supplemental jurisdiction in this case but, in the interests of fairness and prudence, will offer plaintiffs an opportunity to explain why this case should remain before this Court. Accordingly, the Court orders plaintiffs to show cause, within twenty (20) days of the date of this Opinion,

17

why it should exercise supplemental jurisdiction over the remaining pendent state law claims, or plaintiffs should demonstrate what, if any, other basis of jurisdiction may exist in this case.  The remaining defendants, specifically American Mortgage, shall have ten (10) days from the submission of plaintiffs' response to file their own response to the Court's Opinion.

## IV.   CONCLUSION

For the foregoing reasons, GreenPoint's Motion for Judgment on the Pleadings is granted.  Further, plaintiffs shall have twenty (20) days from the date of this Opinion to show why, in the absence of any pending federal claims, the Court should not decline to exercise supplemental jurisdiction over the remaining state law causes of action.  An Order consistent with this Opinion shall be entered.


DATED:   December 17, 2010          /s/ NOEL L. HILLMAN
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.